EXHIBIT A

# ALLSTATE R3001 EXCLUSIVE AGENCY AGREEMENT

This Agreement is between ALLSTATE INSURANCE COMPANY and such affiliates and subsidiaries as are named in the Supplement for the R3001 Agreement (referred to in this Agreement as "the Company") and ___JUAN R. COMPARETTO___ (referred to in this Agreement as "you").

The Company and you agree as follows:

I.    AUTHORITY:

A.    Effective ___MAY 1___, 19_96_, the Company appoints you as its agent to represent the Company in the Exclusive Agency Program. You are authorized on behalf of the Company, during the term of this Agreement, to receive and accept, subject to such restrictions on binding authority as may be established by the Company, applications for insurance covering such classes of risks located in the state(s) of ___CALIFORNIA___ _____ as the Company may from time to time authorize to be written. You are also authorized to sell products specified by the Company through the companies specified in the Supplement for the R3001 Agreement (referred to in this Agreement as "Company Business"). The Company will own all business produced under the terms of this Agreement. You will not represent yourself as having any authority other than that specifically granted to you by the Company. You will not alter any contract or incur any expense or obligation for the Company without prior written approval from the Company.

B.    You are an independent contractor for all purposes and not an employee of the Company. You will have full control of your time and the right to exercise independent judgment as to the time, place, and manner of performing your duties under this Agreement.

C.    This Agreement is the sole and entire agency agreement between the Company and you, and it supersedes and replaces any prior employment, agency, or other agreement between the Company and you. This Agreement also supersedes any prior oral statements and representations by the Company to you and any prior written statements and representations by the Company to you in letters, manuals, booklets, memoranda, or any other format.

D.    The Supplement for the R3001 Agreement ("Supplement") and the Exclusive Agent Independent Contractor Manual ("Manual"), as they may be amended from time to time, are expressly incorporated in their entirety as part of this Agreement. The Company reserves the right to amend the Supplement and Manual at any time without prior notice to you, except that notice regarding changes to commission amounts will be given as indicated in Section XIV.

E.    You will not, either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent, or broker, or refer a prospect to another company, agent, or broker, without the prior written approval of the Company. You may, however, write applications for insurance under an assigned risk, cooperative industry, or government established residual market plan or facility.

F.    The Company will determine in its sole discretion all matters relating to its business and the operation of the Company, including, but not limited to, the following:

1

Collins Declaration, Exhibit A - Page 5

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 3 of 54   Page ID
Case 2:11-cv-09206-J...M   Document 28-3   Filed 01/13...   Page 3 of 11   Page ID
#:545

1. The determination of contract forms and provisions, premiums, fees, and charges for insurance and other Company Business;

2. The acceptance or rejection of any application;

3. The termination or modification of any contract or the refusal to renew any contract;

4. The limitation, restriction, or discontinuance of the writing or selling of any policies, coverages, lines, or kinds of insurance or other Company Business; and

5. The obtaining of any licenses of the Company or the Company's withdrawal from any state, jurisdiction, or territory.

II.   DUTIES AND CONDITIONS:

A.   You will act as an agent of the Company for the purpose of soliciting, selling, and servicing insurance and other Company Business in accordance with the provisions of this Agreement. As an agent of the Company, you will provide customer service, including the collection of payments, for any and all Company policyholders and you will assist in claims administration.

B.   You will record, transmit, and process insurance and Company Business in the manner prescribed in the then current provisions of the Supplement.

C.   You agree to maintain any required agent license in the state or states in which you are appointed to represent the Company and to comply with all laws affecting your operation.

D.   The Company recognizes that you may, in your sole discretion, arrange to have business conducted at your sales location in your absence by your own employees or other persons and that the time during which you are physically present at your sales location is entirely in your sole discretion. You must, however, remain actively involved in the conduct of business at your sales location.

III.   YOUR EMPLOYEES:

A.   You have no authority to employ persons on behalf of the Company, and no employee of yours will be deemed to be an employee or agent of the Company, such employees at all times remaining your employees. You have sole and exclusive control over your labor and employee relations policies, and your policies relating to wages, hours, and working conditions of your employees. You have the sole and exclusive right to hire, transfer, suspend, lay off, recall, promote, assign, discipline, and discharge your employees.

B.   You are solely responsible for all salaries and other compensation of all your employees and will make all necessary salary deductions and withholdings from your employees' salaries and other compensation. You are solely responsible for the payment of any and all contributions, taxes, and assessments, and all other requirements of the federal Social Security, federal and state unemployment compensation, and federal, state, and local withholding of income tax laws on all salary and other compensation of your employees.

C.   You will comply with all other contracts, federal, state or local laws, ordinances, rules, or regulations regarding your employees, including federal or state laws or regulations regarding minimum compensation, overtime, and equal opportunities for employment. In particular, you warrant and agree to comply with the terms of the federal and state Civil Rights Acts, Age Discrimination in Employment Act, Americans With Disabilities Act, Occupational Safety and Health Act, Immigration Reform and Control Act, and the Fair Labor Standards Act.

D.   You agree and warrant that your employees, while working in connection with this Agreement, will comply with any and all applicable federal, state, or local laws, rules, regulations, and ordinances.

2

Collins Declaration, Exhibit A - Page 6

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 4 of 54   Page ID
Case 2:11-cv-09206-J.     'M   Document 36-3   Filed 01/13   Page 4 of 11   Page ID
#:546

IV.    COMPANY PROPERTY, CONFIDENTIALITY:

A.    The Company may furnish you the names and addresses of, and other information concerning, current or prospective policyholders. You may, in your sole discretion, arrange to sell Company insurance to such persons, but you will not be required to do so. The Company will furnish you such forms, manuals, records, and other materials and supplies as the Company deems advisable to assist you. All such property and information furnished by the Company will remain the property of the Company. In addition, the Company will offer, at your expense, such additional materials and supplies as the Company feels may be helpful to you.

B.    You agree that you will not at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information or any information containing trade secrets concerning any matters affecting or relating to the pursuits of the Company, except upon direct written authority of the Company. Furthermore, upon termination of this Agreement, you agree to continue to treat as confidential any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public and that has been obtained by you during the term of this Agreement.

C.    You agree that you will not disclose or grant access to any confidential information or trade secrets to any employee or other person working in connection with this Agreement, unless such employee or other person has signed a copy of the Confidentiality and Non-Competition Agreement attached as Appendix A and you have forwarded a copy of the signed agreement to the Company.

D.    Confidential information includes, but is not limited to, business plans of the Company; information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; and certain information and material identified by the Company as confidential or information considered a trade secret within the meaning of the Illinois Trade Secrets Act. All such confidential information is wholly owned by the Company. Such confidential information may be used by you only for the purposes of carrying out the provisions of this Agreement.

E.    Any confidential information or trade secrets recorded on paper, electronic data file, or any other medium, whether provided by the Company or by you, is the exclusive property of the Company, as is any such medium and any copy of such medium.

F.    You recognize that a breach of the foregoing provisions will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure. You agree that in the event of such breach, the Company, in addition to such other rights and remedies it may have, may apply to any court of competent jurisdiction for an order granting injunctive relief against any act which would violate any such provision.

V.    SALES LOCATION:

A.    You may select your sales location, within a geographical area specified by the Company, subject to Company approval. Initially, you have selected the location at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and such sales location has been approved by the Company. You agree that you will not establish any additional sales location without the prior approval of the Company. You understand that you have no exclusive territorial rights in connection with your sales location.

B.    You agree to keep your sales location open for business as appropriate in the market to provide a proper level of customer service.

C.    You are authorized to sell insurance offered by the Company and Company Business only in the state containing your sales location and other states in which you are properly licensed and appointed as an agent by the Company.

3

Collins Declaration, Exhibit A - Page 7

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 5 of 54   Page ID
Case 2:11-cv-09206-J.   'M   Document 28-5   Filed 01/13.   Page 5 of 11   Page ID
#:547
#:2855

VI.   ADVERTISING:

    A.   The Company will advertise its products and provide promotional material in accordance with its advertising policies. You may also advertise in your sole discretion, subject to the requirements in paragraph B, below.

    B.   You will submit all signs and advertising copy, including, but not limited to, sales brochures, display advertisements in telephone directories, newspaper advertisements, radio and television commercials, all sales promotional plans and devices, and all customer contract forms, guarantee certificates and other forms and materials to the Company for approval, if they use or contain any reference to any service mark or trade name of the Company. You will not use any such advertising material or sales promotional plan or device without obtaining prior written approval from the Company. The Company has the right to disapprove any or all of the aforesaid advertising forms and other materials insofar as they, in the exclusive judgment of the Company, do not conform to Company policy regarding use of Company service marks or trade names; may subject the Company to liability or loss of goodwill; may damage the reputation of the Company or Company customer relations; may fail to adhere to the requirements of any federal, state, or local governmental rules, regulations, or laws; may fail to conform to community or Company standards of good taste and honest dealing; or may be detrimental to the business interests of the Company.

VII.   SERVICE MARK AND TRADE NAME PROTECTION:

    A.   You agree to cooperate fully in the quality control program conducted by the Company relating to the use of its service marks and trade names and the nature and quality of services rendered and goods distributed under its service marks and trade names. The Company will have the right to specify, delineate, or limit the services or goods on, or in connection with, which you may use any of its service marks or trade names. In the event that the nature or the quality of the services or goods on, or in connection with, which you use any of the service marks or trade names of the Company is not acceptable to the Company, then the Company will have the right to require you to institute appropriate procedures to correct any deficiencies noted by the Company.

    B.   You agree, at the request and expense of the Company, to assist the Company in protecting and enforcing the rights of the Company in and to any and all of its service marks and trade names which you may then be using.

    C.   You agree that you will hold the Company harmless and indemnify it for any and all liability with respect to your use of any and all of the Company's service marks or trade names. You will not in any manner encumber, alienate, license, or transfer to any other entity any right whatsoever concerning the service marks or trade names the Company authorizes you to use in the performance of this Agreement, except as permitted in Section XV.

VIII.   EXPENSES:

You will be responsible for the payment of all expenses that you incur in the performance of this Agreement including: expenses for your sales location, supplies not furnished by the Company, compensation of your employees or other assisting persons whom you engage, telephone, postage, and advertising expenses incurred at your direction, and all other charges and expenses.

IX.   TELEPHONE:

All telephone numbers used in connection with business conducted pursuant to this Agreement and all goodwill associated with them inure to the benefit of the Company. Such numbers must be separate from phone numbers used by you for any other business operation.

X.   INDEMNIFICATION:

    A.   The Company will defend and indemnify you against liability, including the cost of defense and settlements, imposed on you by law for damages sustained by policyholders and caused by acts or omissions of the

4

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 6 of 54   Page ID
Case 2:11-cv-09206-J... M   Document 2058   Filed 01/13   Page 6 of 11   Page ID
#:548

Company, provided that you have not caused or contributed to cause such liability by your acts or omissions. You agree, as a condition to such indemnification, to notify the Company promptly of any claim or suit against you and to allow the Company to make such investigation, settlement, or defense as the Company deems prudent. The Company reserves the right to select counsel to represent you in any such action. You also agree to cooperate fully with the Company in any such investigation, settlement, or defense.

B.   You will indemnify the Company against liability, including the cost of defense and settlements, imposed on the Company by law for damages sustained by any person and caused by your acts or omissions, or those of any employee or other person working in connection with this Agreement, provided that the Company has not caused or contributed to cause such liability by its acts or omissions. The Company agrees, as a condition to such indemnification, to notify you promptly of any claim or suit against the Company and to allow you to make such investigation or settlement as you deem prudent. The Company agrees to cooperate fully with you in any such investigation or settlement. The Company reserves the right to select counsel to represent it in any such action and to make such investigation or settlement as the Company deems prudent.

## XI.   INSURANCE:

A.   You agree that you will, at your sole expense, obtain and maintain during the term of this Agreement policies of insurance as described in the Supplement, as may be amended from time to time.  Such policies must be obtained from companies satisfactory to the Company and must be adequate to protect against all expenses, claims, actions, liabilities, and losses related to the subjects covered by the required policies.

B.   Where specified, each policy must name the Company as an additional insured and must contain a severability of interest/cross liability endorsement. Each policy must also expressly provide that it will not be subject to material change or cancellation without at least 30 days prior written notice to the Company.

C.   You must furnish the Company with proof of insurance upon request by the Company.  If, in the Company's opinion, such policies do not afford adequate protection for the Company, the Company will so advise you, and if you do not furnish evidence of acceptable coverage within 15 days, the Company will have the right to obtain additional insurance at your expense and deduct the cost of such insurance from monies owed you by the Company.

## XII.   POLICIES IN YOUR ACCOUNT:

Policies which are credited to your account are described in the Supplement. The Company will leave in your account all policies credited to your account so long as the policyholder resides within a state in which you are licensed and appointed by the Company, except that the Company may transfer any policy to the account of another agent of the Company when a policyholder has made a request for such transfer.

## XIII.   MONEY COLLECTED BY YOU:

All payments collected or received by you in the performance of this Agreement are the property of the Company, will be treated as trust funds, and will be promptly transmitted to the Company without deduction for any purpose. You agree to maintain an account for such funds in a financial institution, which the Company may review and audit at any time. You must maintain accurate records and current remittance reports. You may commingle Company funds with business operating funds where permitted by law.

## XIV.   COMPENSATION:

A.   The sole compensation to which you will be entitled for services rendered pursuant to this Agreement will be the commissions set forth in the Supplement, as may be amended from time to time.  The Company will pay you your commissions at the time and in the manner set forth in the Supplement.  However, due to the inherent uncertainty of business conditions, the Company reserves the right to increase or decrease any commission amounts and to change the commission rules.  If the Company changes commission amounts,

5

Collins Declaration, Exhibit A - Page 9

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 7 of 54   Page ID
Case 2:11-cv-09206-JA\   'M   Document #:2857   Filed 01/13.   Page 7 of 11   Page ID
#:549

It will provide you with written notice of the changes at least 90 days prior to the date on which they are to become effective.

B.   The Company may provide you with such bonuses, awards, prizes, and other remuneration based on performance, if any, as it may prescribe in its sole discretion.

C.   If any application for insurance is rejected, or any policy is surrendered or canceled, in whole or in part, for any reason, before the expiration of the policy period, or if any premium is reduced or any overpayment made to you, the commissions paid to you on the amount returned or credited to the policyholder, or the amount overpaid to you, will constitute an indebtedness of yours to the Company and will be charged to you or recovered from you by reducing any future commissions, awards, or bonuses due you.

XV.   TRANSFER OF INTEREST IN AGREEMENT:

A.   This Agreement is personal to you and is being entered into in reliance upon and in consideration of your skill, qualifications, and representations. Accordingly, you may not execute a transfer of your interest in this Agreement without the prior written approval of the Company. A transfer of interest is described in the Supplement and includes, but is not limited to, any sale, merger, or assignment, in whole or in part, directly, indirectly, or contingently, of this Agreement or any rights or obligations under it. You have the obligation to notify the Company of a proposed transfer and to request Company approval. The Company retains the right in its exclusive judgment to approve or disapprove such a transfer.

B.   Approval of a proposed transfer of your entire interest in this Agreement will be conditioned upon the termination of this Agreement and the execution of a then current agency agreement by the proposed transferee.

C.   Policies in your account (Section XII, above) and any applicable rights to termination payments will be transferred to an approved transferee.

XVI.   TERMINATION OF AGREEMENT:

A.   This Agreement will be terminated automatically:

1.   On the effective date of any transfer of interest, whether approved or not, as described in Section XV, above;

2.   Upon your death or permanent incapacity;

3.   Upon your loss of any required agent license; or

4.   Upon the surrender of or the election not to renew the Company's license to sell insurance in all lines in the state in which your sales location is located.

B.   This Agreement may be terminated:

1.   At any time by mutual agreement of the parties in writing;

2.   By either party, upon providing 90 days prior written notice to the other, or such greater number of days as is required by law. Once written notice of termination has been given by either party, you will, immediately upon request of the Company, cease to act or to represent yourself in any way as an agent or representative of the Company, but you will receive compensation pursuant to Section XIV, from the Company for the period up to and including the specified termination date; or

3.   By the Company, for cause, immediately upon providing written notice to you. Cause may include, but is not limited to, breach of this Agreement, fraud, forgery, misrepresentation or conviction of a felony. The list of examples of cause just stated shall not be construed to exclude any other possible ground as cause for termination.

6

Collins Declaration, Exhibit A - Page 10

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 8 of 54   Page ID
Case 2:11-cv-09206-J...   M   Document 28-8   Filed 01/13   Page 8 of 11   Page ID
#:550

## XVII.   OBLIGATIONS UPON TERMINATION OF AGREEMENT:

Except as otherwise provided in a subsequent agreement between you and the Company, upon termination of this Agreement, you agree that:

A.   You will not act or represent yourself in any way as an agent or representative of the Company.

B.   You will immediately return all property belonging to the Company, or dispose of it in such manner as the Company specifies.

C.   You will immediately cease to use such telephone numbers referenced in Section IX. above and execute an Order of Transfer of Responsibility for such numbers in your name to the Company or to any party the Company designates, and you will immediately notify the telephone company of any such transfer. You will be responsible for all charges incurred up to the date of execution of the transfer.

D.   For a period of one year following termination, you will not solicit the purchase of products or services in competition with those sold by the Company:

1.   With respect to any person, company, or organization to whom you sold insurance or other products or services on behalf of the Company and who is a customer of the Company at the time of termination of the Agreement;

2.   With respect to any person, company, or organization who is a customer of the Company at the time of termination of this Agreement and whose identity was discovered as a result of your status as a Company agent or as a result of your access to confidential information of the Company; or

3.   From any office or business site located within one mile of any locations from which you solicited or sold Company insurance or other products or services during the year immediately preceding termination of this Agreement.

In the event that such one year period or one mile distance exceeds the time or distance permitted by any applicable law, such period or distance will be automatically adjusted to the maximum period or distance permitted by such law. If any other provision in this paragraph D. conflicts with any existing law, it will be applied to the extent permitted by such law.

E.   You will immediately cease and desist from any and all use of Company service marks and trade names. You will immediately return to the Company all property in your possession or under your control bearing any Company service mark or trade name, or dispose of it in such manner as the Company specifies.

F.   You recognize that a breach of any of the foregoing provisions will cause irreparable damage to the Company's business and that such damage will be difficult or impossible to measure. You agree that in the event of any such breach, the Company, in addition to such other rights and remedies as it may have, may apply to any court of competent jurisdiction for an order requiring specific performance of the foregoing provisions or granting injunctive relief against any act which would violate any such provision.

G.   You recognize and acknowledge that each of the foregoing provisions of this Section XVII. is reasonable and necessary to protect and preserve the legitimate business interests of the Company, its present and potential business activities, and the economic benefits derived therefrom. You recognize and acknowledge that the foregoing provisions will not prevent you from earning a livelihood and are not an undue restraint on you.

## XVIII.   TERMINATION PAYMENT OPTIONS:

A.   In the event that this Agreement is terminated due to the Company's approval of a transfer of interest (Section XVI. A. (1) above), you are not eligible for any termination payments from the Company.

B.   In the event that this Agreement is terminated:

Collins Declaration, Exhibit A - Page 11

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 9 of 54   Page ID
Case 2:11-cv-09206-J,   ^M   Document 285-9   Filed 01/13   Page 9 of 11   Page ID
#:551

1.   Automatically due to an unapproved transfer of Interest (Section XVI. A. (1) above);

2.   Immediately by the Company for cause (Section XVI. B. (3) above); or

3.   By the mutual agreement of you and the Company (Section XVI. B. (1) above),

the Company will compute a termination payment amount for you. The computation and payment of this amount are subject to the conditions set forth below and the rules and definitions in the Supplement. The termination payment amount for each eligible line of insurance will be computed as follows:

earned premiums for personally secured property and casualty policies and new net written premium for personally secured life policies as specified in then current Supplement and recorded in your account in the full 12 calendar months preceding the effective date of termination of this Agreement

multiplied by

1.5 times the then current renewal commission percentage for property and casualty policies, as specified in the then current Supplement and 1.5 times the percentage specified in the then current supplement for life policies; plus renewal credits on personally secured life policies recorded in your account in the full 12 calendar months preceding the effective date of termination of this Agreement, as specified in the then current Supplement

multiplied by 1.5.

C.   For the purpose of computing the termination payment described in paragraph B. above, premiums for policies issued pursuant to any assigned risk, cooperative industry, or government established residual market plan or facility, or premiums or credits for policies issued under any agreement other than the R3000, R3001, R3001A, and R3001B agreements will be excluded.

D.   In the event that this Agreement is terminated for any reason except an approved transfer of Interest, and the Company has surrendered or elected not to renew its license to sell insurance in one or more lines in a state in which you are appointed as a Company agent, a termination payment will be calculated for you as described in paragraph B. above for any line of insurance in any other state in which the Company has an active license for that line and in which you held an appointment on the effective date of termination of this Agreement.

E.   In the event that this Agreement is terminated:

1.   Automatically due to:

a,   Your death or permanent incapacity (Section XVI. A. (2) above); or

b,   Your loss of any required agent license (Section XVI. A. (3) above);

or

2,   Due to either party giving 90 days written notice to the other (Section XVI. B. (2) above);

then you or your legal representative will have up to ninety (90) days from the date of the automatic termination or notification of termination to either:

1.   Accept the termination payment described in paragraph B. above (This termination will then be considered to be a termination based on the mutual agreement of both parties.); or

2,   Transfer your interest in this Agreement, subject to the notice and approval requirements in Section XV. above. (This termination will then be considered to be a termination based on an approved transfer, and treated as in paragraph A. above.)

8

Collins Declaration, Exhibit A - Page 12

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 10 of 54   Page ID
Case 2:11-cv-09206-J〟   M   Document 2866   Filed 01/13〟   Page 10 of 11   Page ID
#:552

F.   The payment provided for in paragraph B. will be made in 12 monthly installments, subject to appropriate adjustments, beginning no later than the end of the month after the month in which all property, confidential information, and trade secrets belonging to the Company have been returned or made available for return to the Company or its authorized representative, or have been disposed of in such manner as the Company specifies.

G.   If you qualify for payment by the Company under paragraph F. above, you shall qualify for and continue to receive the remaining monthly installments from the Company, so long as you continue to comply with the provisions of Section IV. and Section XVII. above. In the event that you breach or violate any of the provisions of Section IV. or Section XVII. above, the Company shall be entitled to withhold remaining monthly installments, if any, and to receive from you liquidated damages in an amount equal to 100 percent of the total amount already paid to you in monthly installments, plus the attorneys' fees and expenses incurred by the Company in enforcing the provisions of Section IV. or Section XVII.

XIX.   NOTICE:

All notices will be deemed to have been given if personally delivered, sent by facsimile transmission, or mailed as follows:

If to the Company: Allstate Insurance Company   *725 West Town & Country Road*
*Orange, California*
Attention: *Human Resources Manager*

If to you:   *Juan R. Comparetto*
█████████████████████████

or to such other person or address as any party may furnish or designate to the other in writing.

XX.   GENERAL PROVISIONS:

A.   This Agreement may not be modified except by a written agreement between the Company and you which expressly states that it modifies this Agreement. No other written statements, representations, or agreements and no oral statements, representations, or agreements will be effective to modify this Agreement. No representative of the Company will have authority to modify this Agreement except as provided in this Section XX. Nothing in this Section will affect the Company's right to amend the Supplement, as provided in Section I. D.

B.   You acknowledge that you have reviewed the Supplement and Manual and that you have an ongoing responsibility to review all changes to the Supplement and Manual issued by the Company.

C.   References in this Agreement to the Supplement and Manual are references to the Supplement and Manual including any changes which may be made from time to time and distributed to you by the Company.

D.   You acknowledge that you have read this Allstate R3001 Exclusive Agency Agreement, understand it, and agree to be bound by its terms.

E.   The authority granted to you under this Agreement is nonexclusive. The term "Exclusive" as used in the title of this Agreement refers to the obligations assumed by you under Section I. E.

F.   The descriptive headings of this Agreement are intended for reference only and will not affect the construction or interpretation of this Agreement.

**Collins Declaration, Exhibit A - Page 13**

Case 2:11-cv-09206-JAK-FFM   Document 72-1   Filed 09/24/12   Page 11 of 54   Page ID
Case 2:11-cv-09206-JA   M   Document #:561   Filed 01/13/   Page 11 of 11   Page ID
#:553

G.   If any provision or part of this Agreement is held invalid for any reason, such invalidity will not affect any other provision or part of this Agreement not held invalid, and such remaining provisions and parts will remain in full force and effect.

H.   The failure of either party to insist upon the performance of any of the terms of this Agreement in any one or more instances will not be construed as a waiver or relinquishment of the future performance of any such term. The obligation of the parties with respect to any such future performance will continue in full force and effect.

I.   This Agreement will inure to the benefit of and will be binding upon the parties and their respective successors.

J.   This Agreement may be executed in counterparts, each of which will be deemed an original.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its authorized representative and you hereby accept the terms of this Agreement.

ALLSTATE INSURANCE COMPANY

_____
(manager)

2-23-96
_____
(date)

YOU

JUAN R. COMPARETTO
_____
(name)

2-20-96
_____
(date)

Collins Declaration, Exhibit A - Page 14

EXHIBIT B



PL 00619

**ALLSTATE**

## MANUAL REVISION NOTICE

| | | | |
|---|---|---|---|
| **To:** | Holders of : | Supplement For The R3001 Agreement, Volume 1 | **Date:** December 1, 1995 **No:** 9 |

**From:** Home Office Sales

This is a complete reprint of the Supplement.  Please destroy your current Supplement and replace with the attached.

| New Page(s) to be Inserted | Explanation of Change |
|---|---|
| 0-0-i/ii | Master Table of Contents. |
| 1-0-i/ii | Chapter 1 Table of Contents. |
| 1-1-1 | Deleted subsection 2.0 *Sharing Office Space*. |
| 1-2-1/6 | Added Expanded Market Coverage Business to list of business not considered "policies in account".  Added Lincoln Benefit Life Insurance Company and Lincoln Benefit Financial Services to subsections 2.0 and 3.0. |
| 1-3-1/3 | No changes. |
| 1-4-1 | No changes. |
| 1-5-1 | In subsection 1.0 revised recorded commissions to include relationship fee business.  Added paragraph 3. |
| 1-6-1/3 | In subsection 1.0 inserted footnote 1.  In subsections 2.2 and 3.0 eliminated references to Policy Value payments; no longer applicable.  In subsection 2.3 revised 1st, 3rd and last bullets. |
| 1-7-1 | In subsection 2.0, revised list of business excluded from conversion allowance.  Also clarified last sentence. |
| 1-8-1 | No changes. |
| 2-0-i | Chapter 2 Table of Contents. |
| 2-1-1 | In subsection 2.0 updated documentation regarding UL policies that are in their 6th or subsequent policy year. |
| 2-1a-1/2 | Added Allstate Property and Casualty (TX) to the table in 2.1.  Revised Hawaii JUP commission amounts. |
| 2-1b-1/2 | Added Allstate Indemnity (CA) for Condominiums to table in 2.0.  Added subsection 4.0, *Hawaii Hurricane Relief Fund*. |
| 2-1c-1/2 | No changes. |
| 2-1d-1/2 | Moved table with current commission amounts to page one and table with old commission amounts to page two.  Corrected commission amounts for Allstate Protector Plus and Allstate Maximum Term. |
| 2-1e-1 | Moved table with current commissions to 1.1 and table with old commissions to 1.2. |
| 3-0-i/iv | Chapter 3 Table of Contents. |

PL 00620

**ALLSTATE**

## MANUAL REVISION NOTICE

| New Page(s) to be Inserted | Explanation of Change |
|---|---|
| 3-1-1/3 | Eliminated subsection 2.4 *Coverage Added by Customer Account Representative.* Revised *Market Assistance Program* to *Market Assistance Plan.* |
| 3-2-1/10 | Added Allstate Property and Casualty to subsections 1.0 and 2.3. Renamed subsection 4.0 to *Accommodation Products* and renumbered subsequent subsections. Subsection 4.1 *Allstate Parts and Labor Protection Plan* is no longer a test. Subsection 4.2 *North Carolina Sub-Standard Auto;* Allstate's agreement with Integon's New South Insurance Company terminated November 5, 1995. Inserted sections 4.3 *Explorer* and 4.4 *Financial Indemnity,* two new non-standard auto carriers in California. Moved *Finance* to Chapter 3 Section 7. |
| 3-3-1-/3 | Inserted subsection 2.4, *Hawaii Hurricane Relief Fund.* Moved *Finance* to Chapter 3 Section 7. |
| 3-3a-1/6 | Added Indemnity Condominium for California only. |
| 3-3b-1/2 | In subsection 4.2, clarified first sentence. |
| 3-3c-1/2 | Moved *Finance* to Chapter 3 Section 7. |
| 3-3d-1/2 | No changes. |
| 3-3e-1/2 | No changes. |
| 3-3f-1 | No changes. |
| 3-3g-1 | No changes. |
| 3-4-1/3 | In subsection 5.1 deleted the word 'new'. |
| 3-4a-1/2 | In subsection 3.0 changed heading to *Universal Life Increases/Decreases* and added a paragraph regarding commissions on UL decreases. |
| 3-4b-1/4 | In subsection 2.3 revised documentation to clarify commissions on conversions of Term Policies and Term Riders which are in effect less than one year. |
| 3-4c-1 | No changes. |
| 3-4d-1 | No changes. |
| 3-4e-1/2 | Moved *Lincoln Benefit Life Insurance Company* from Chapter 3 Section 5 to Chapter 3 Section 4e. 'Old' section 4e has been renumbered to section 4f. |
| 3-4f-1/2 | Moved *Plan I Life Bonus* from section 4e to section 4f. Added paragraphs to subsection 1.0 regarding the new annual bonus option and bonus credits for face amounts in excess of $5 million. In 1.0 revised Life Gross Issued Premium amounts for bonus levels I-IV in Quarterly Bonus Requirements Table and added Annual Bonus Requirements Table. 'Old' section 4f has been renumbered to 4g. |
| 3-4g-1/4 | Moved *Plan G Life Bonus-Expense Allowance* (Allstate Life Insurance Company of New York) from section 4f to section 4g. |

PL 00621

**ALLSTATE**

**MANUAL REVISION NOTICE**

| New Page(s) to be Inserted | Explanation of Change |
|---|---|
| 3-4h-1 | Moved *Life Retention Bonus* from section 4g to section 4h. |
| 3-5-1/5 | In subsection 1.0 revised Plan Services, Inc. (PSI) to HealthPlan Services, Inc. (HPSI). In subsection 2.1.1, revised 1st bullet under eligibility requirements. In subsection 2.2 deleted all text related to Guardian Life Insurance Company of America. Inserted subsection 2.3, Health Insurance of Vermont. Moved Lincoln Benefit Life to Chapter 3 section 4e. Added Allstate Networking Agency. Inserted new section; *Lincoln Benefit Financial Services.* |
| 3-6-1/6 | No changes. |
| 3-6a-1/3 | No changes. |
| 3-6b-1/4 | No changes. |
| 3-6c-1/4 | No changes. |
| 3-6d-1 | No changes. |
| 3-7-1 | Added new section for Finance; moved from Chapter 3 Section 2. Added Alaska, North Dakota and the District of Columbia as states where finance notes cannot be sold. |
| 3-8-1/2 | Added new section for Expanded Market Coverage. |
| 4-0-i/ii | Chapter 4 Table of Contents. |
| 4-1-1/4 | In subsection 1.0 eliminated statement regarding capturing policies written by other agents whose agreement allows other types of agents to capture their business. In subsection 3.0 eliminated TBOP from second bullet; product is no longer sold. Added new rule, bullet 5, for Hawaii Hurricane Relief Fund. |
| 4-2-1/4 | No changes. |
| 4-3-1/2 | In subsection 1.2, paragraph one, added language regarding a customer's request for another agent. |
| 4-4-1/2 | No changes. |

PL 00622

PL 00623

# Master Table Of Contents

**Chapter 1:**   R3001 Agents

   Section 1:   R3001 Agents
   Section 2:   Subsidiaries, Affiliates, Company Business
   Section 3:   Basis of Commission
   Section 4:   Transfer of Interest
   Section 5:   Final Commission Computation
   Section 6:   Termination Payment
   Section 7:   Conversion Allowance
   Section 8:   Operating Procedures

**Chapter 2:**   Schedule of Commissions

   Section 1:    Introduction
   Section 1a:   Auto
   Section 1b:   Personal Property
   Section 1c:   Commercial
   Section 1d:   Personal Life
   Section 1e:   Motor Club

**Chapter 3:**   Commission Interest

   Section 1:    Introduction
   Section 2:    Auto
   Section 3:    Personal Property
   Section 3a:   Homeowners
   Section 3b:   Mobilehome
   Section 3c:   Boatowners - Recreational Package Policy
   Section 3d:   Residential Fire (Including CPL-FCPL Added Coverages)
   Section 3e:   Landlords Package Policy
   Section 3f:   Workers' Compensation - Residence Employees
   Section 3g:   Personal Umbrella Policy
   Section 4:    Personal Life
   Section 4a:   Riders, Benefits, Miscellaneous
   Section 4b:   Life Conversions and Replacements
   Section 4c:   Flexible Premium Annuities
   Section 4d:   Single Premium Products
   Section 4e:   Lincoln Benefit Life Insurance Company
   Section 4f:   Plan I Life Bonus (Non-New York)
   Section 4g:   Plan C Life Bonus/Expense Allowance (Allstate Life Insurance Company of New York)
   Section 4h:   Life Retention Bonus
   Section 5:    Accommodation Products
   Section 6:    Commercial
   Section 6a:   Customizer
   Section 6b:   Business Package Policy (BPP)

PL 00624

Section 6c:     Commercial Casualty
Section 6d:     Commercial Fire
Section 7:      Finance
Section 8:      Expanded Market Coverage

Chapter 4:     Unrepresented Policies

Section 1:      Capturing
Section 2:      Special Capturing Rules
Section 3:      Assigned Commission Interest
Section 4:      Service Fees And Relationship Fees

PL 00625

# Table Of Contents

Chapter 1: R3001 Agents

**Section 1: R3001 Agents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0   Preface . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Section 2: Subsidiaries, Affiliates, Company Business** . . . . . . . . . . . . . . . . . . . 1

    1.0   Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0   Parties To The R3001 Agreement . . . . . . . . . . . . . . . . . . . . . . . . . 4
    3.0   Company Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    4.0   Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    5.0   Processing Fee Applicable To Professional Liability Insurance (Agents Errors And Omissions Coverage) Obtained By The Company . . . . . . . . . . . . . 6
    6.0   Payment of Professional Liability Insurance (Errors & Omissions) Deductible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Section 3: Basis Of Commission** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0   New Business Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.0   Renewal Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        3.1   Service Fees And Relationship Fees . . . . . . . . . . . . . . . . . 1
        3.2   Countersigning Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    4.0   Agency Development Bonus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    5.0   Recovery Of Unearned Commission . . . . . . . . . . . . . . . . . . . . . . . 3

**Section 4: Transfer Of Interest** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0   Approval Of A Transfer Of Interest . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0   Business Included In Transfer Of Interest . . . . . . . . . . . . . . . . . . . 1
    3.0   Commission Amounts Applicable To Purchased Business . . . . . . . . . . . . . 1
    4.0   Allstate Flood Insurance, Assigned Risk, Underwriting Association . . . . . 1

**Section 5: Final Commission Computation** . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0   Computation Of Commission . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0   Recovery Of Unearned Commission . . . . . . . . . . . . . . . . . . . . . . . 1

**Section 6: Termination Payment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0   Agreement Specifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0   Eligible Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        2.1   Auto, Personal Property, Commercial . . . . . . . . . . . . . . . 1
        2.2   Personal Life . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        2.3   Excluded Business . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.0   Termination Payment Calculation . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Section 7: Conversion Allowance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0    Calculation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Section 8: Operating Procedures** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0    Computer Systems . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PL 00627

R3001 Agents

# Section 1:  R3001 Agents

## 1.0    Preface

The **Supplement For the R3001 Agreement** is intended to explain and expand upon the provisions of the R3001 Agreement which directly refer to the Supplement.  The Supplement and the *Exclusive Agent Independent Contractor Manuals*, as they may be amended from time to time, are incorporated as part of the Agreement between the R3001 Agent and the Company.  The sections referencing the Supplement include the following:

- **Authority-** The R3001 Agent's role is to sell, solicit, and service insurance and ".Company Business" - referred to in Chapter 1, Section 2 (3.0) - as an independent contractor on behalf of Allstate Insurance Company and its subsidiaries and affiliates referred to in Chapter 1, Section 2 (2.0).

- **Insurance-** Chapter 1, Section 2 (4.0) of this Supplement specifies the types of insurance an R3001 Agent is required to maintain.

- **Commissions -** Chapter 1, Section 3 of this Supplement details how new and renewal commission will be recorded and paid to R3001 Agents.  Recovery of unearned commission is also discussed in this section of this Supplement.  The final pay computation for terminated R3001 Agents is found in Chapter 1, Section 5.  Calculations to determine conversion allowances for certain new R3001 Agents are set forth in Chapter 1, Section 7.  Chapter 2 of this Supplement sets forth the commission amounts applicable to R3001 Agents.  Chapter 3 contains the rules governing special situations relating to commission interest.

  Chapter 4 describes the rules applicable to unrepresented business.

- **Transfer Of Interest -** The transfer of interest provision of the R3001 Agreement is explained in Chapter 1, Section 4 of this Supplement.  A transfer of interest requires written consent by the Company in its sole discretion.

- **Termination Payment -** R3001 Agents will be authorized a special payment subject to certain conditions once they terminate their agreement.  Chapter 1, Section 6 of this Supplement describes the basis for this payment.

- **Computer Systems -** The Company is reliant upon computer technology to process Company Business.  The Company's standard operating procedures provide efficient, accurate and uniform methods for processing such business.

The individual referred to as "you" in the R3001 Agreement and the entity referred to as the "Agency" in the R3001A Agreement or R3001B Agreement will be referred to in this Supplement as the "R3001 Agent."  Any reference to the R3001 Agreement in this Supplement shall be considered applicable to the R3001A Agreement and the R3001B Agreement as well.  Any reference to agent in this Supplement shall include but not be limited to R3001 Agents.

PL 00629

# Section 2:  Subsidiaries, Affiliates, Company Business

## 1.0  Definitions

The following definitions of terms used in this Supplement apply:

"line," as used in this Supplement, will be defined as follows:

- "individual line" shall mean a particular kind of insurance or coverage such as Renters, Special Auto, Recreational Package Policy, etc.

- "line group"[1] shall mean the grouping of individual lines for commission purposes such as Auto, Homeowners, Personal Life, Commercial Casualty, etc.

- "line category" shall mean the combining of line groups for reporting or other special purposes.  Auto, Commercial, Life, and Personal Property are the most common categories.

"new policy" means a policy issued:

- to an applicant who was not previously an Allstate policyholder relative to the same line of insurance; or

- as respects all lines of insurance, except for Life, to a former Allstate policyholder whose policy of the same line of insurance lapsed, expired, or was terminated 120 days[2] or more prior to the effective date of the newly issued policy; or

- as respects Life insurance, (a) to an Allstate insured (or former Allstate insured) whose Life insurance lapsed more than 6 months before or 12 months after the effective date of the newly issued insurance, or (b) to provide additional Life insurance for an Allstate Life insured.

"renewal policy" means the renewal or extension of a new policy beyond its initial term.  However, when a new policy is issued for a period longer than 12 months, each period of 12 months beyond the first anniversary shall be considered as being under a renewal policy.

"net written premium" means

- as respects all lines of insurance, except for Life, the gross amounts recorded with respect to personally secured policies, not including installment payment fees, and

---

[1]   In certain circumstances a line group will be comprised of only one individual line.

[2]   60 days, if the former Agent of Record's agreement so specifies.

PL 00630

- as respects Life insurance, the policy premium recorded with respect to personally secured policies, including premiums which by the terms of the policy, are waived on account of disability or death, or paid under an automatic premium loan provision;

less premium refunds or credits (including any estimated refunds or credits, or estimated dividends on participating policies) and amounts recorded as uncollected.

**"earned premium"** means the amount of net premium written on personally secured policies that becomes earned as the policy period develops and as the insurance protection is provided.

**"recorded"** means written, issued and reflected on the agent's monthly production statement.

**"commission interest"** as used with respect to any policy or coverage, means that the premium for such policy or coverage is identified in the agent's account as though for a personally secured policy.

**"personally secured"** as used with respect to a new policy or major coverage, means written on an application secured by the agent through the agent's initiative and personal solicitation and, with respect to a renewal policy, means written as a first or subsequent renewal of such new policy or such major coverage.  Business secured through the efforts of the agent's support staff will also be considered personally secured.

**"unrepresented policy"** - means an Allstate policy the premium for which is free of any Allstate agent's commission interest.

**"capture"** means that an agent has become eligible to become the Agent of Record on a policy which is unrepresented.  (Those lines excluded from "unrepresented policies" for purposes of capturing are listed in Chapter 4 of this Supplement.)

**"agent of record"** means an agent who:

- first writes a personally secured new policy within a particular line of insurance; or

- captures commission interest in unrepresented policies according to the "Unrepresented Policies" provision of Chapter 4 of this Supplement, or

- is assigned commission interest in a policy under the provisions of a Company-approved program.

**"policies in account"** is that Allstate business for which the R3001 Agent is the Agent of Record as well as certain other business the agent is permitted to sell including certain accommodation business.  "Policies in account" does not include the following business:

- Allstate Flood Insurance
- Underwriting Association
- Assigned Risk
- FAIR Plans
- Expanded Market Coverage
- Finance
- Hawaii Hurricane Relief Fund

PL 00631

- Lincoln Benefit Financial Services

For purposes of Transfer of Interest (Chapter 1, Section 4) and Termination Payment (Chapter 1, Section 6), the following business will also not be considered as "policies in account":

- Business not receiving renewal commission such as Motor Club and Single Premium Life Products

- Business on which the agent receives a service fee, relationship fee or countersigning fee

- Business in lines which the Company no longer sells in the state(s) in which the agent is appointed to represent the Company

For purposes of Transfer of Interest (Chapter 1, Section 4) only, the following business will also not be considered as "policies in account":

- Voluntary property and casualty and life business written under any prior Allstate agent agreement, other than the R3000 Agreement, or the RRM program unless the R3001 Agent has completed five full years in EA independent contractor status or the R3001 Agent has died or become permanently incapacitated.

- Accommodation business (Auto) -- Allstate Parts and Labor Protection Plan, Explorer and Financial Indemnity.

For purpose of Termination Payment (Chapter 1, Section 6) only, the following business will also not be considered as "policies in account":

- Business written by the agent under any prior Allstate agent agreement, other than the R3000 Agreement, or the RRM program

- Business the agent purchases from any other Allstate agent which was written under any agreement other than the R3000 or R3001 Agreement.

- Business written under any prior Allstate agent agreement, other than the R3000 Agreement, or the RRM program for an insured that is subsequently replaced in an affiliated company with no lapse in coverage at the time of replacement

- Accommodation business

- Reinsurance Facility business written under any Allstate agent agreement or the RRM program

Policies transferred from an R3001 Agent's account to the account of another agent at the request of the policyholder will not be replaced.

"service fee" as used with respect to any unrepresented policy that has been assigned to the agent or the agent's sales location, if applicable, means the amount payable to the agent for servicing a policy based on the premium for such policy. Such business is not considered personally secured and is eligible for capture by any agent.

PL 00632

"relationship fee" as used with respect to any unrepresented policy that has been assigned to the agent who has completed a Customer Policy Review on that policy, means the amount payable to the agent for servicing the policy based on the premium for such policy. Such business is not considered personally secured and is eligible for capture by any agent.

"anniversary date" with respect to a policy or coverage means the date immediately following the end of a period of one or more complete years from the initial effective date of such policy or coverage.

"off-anniversary date" with respect to a six-month policy or coverage means the date immediately following the end of a period of six complete months after the initial effective date or anniversary date of such policy or coverage.

## 2.0 Parties To The R3001 Agreement

The R3001 Agreement is an agreement between the Allstate Insurance Company and the agent. In addition, the following subsidiaries and affiliates are also parties to the agreement:

Allstate Indemnity Company
Allstate Property and Casualty Insurance Company
Allstate Life Insurance Company (all agents except New York)
Allstate Life Insurance Company of New York (New York agents only)
Allstate County Mutual Insurance Company (Texas)
Allstate Texas Lloyd's, Inc. (Texas)
Allstate Motor Club, Inc.
Lincoln Benefit Life Insurance Company

## 3.0 Company Business

In addition to the various insurance lines the agent is permitted to solicit, sell and service while representing the Allstate Insurance Company, the agent is also permitted to sell other products specified by the Company and referred to in the R3001 Agreement as "Company Business." Company Business will include all business written by R3001 Agents through the following companies:

**Allstate Indemnity Company**

An alternate company to Allstate Insurance Company into which the Underwriting department may place business.

**Allstate Property and Casualty Insurance Company**

An alternate company to Allstate Insurance Company into which the Underwriting department may place business.

PL 00633

**Allstate Life Insurance Company**

Life business written by all agents, except those in New York, will be underwritten by this company.

**Allstate Life Insurance Company of New York**

Life business written by New York agents will be underwritten by this company.

**Allstate County Mutual Insurance Company**

Substandard automobile business coded to Texas may be underwritten by this company. Allstate County Mutual may also underwrite other personal lines business.

**Allstate Texas Lloyd's, Inc.**

An alternate company to Allstate Insurance Company and Allstate Indemnity Company into which the Underwriting department may place property lines and commercial lines business.

**Allstate Motor Club, Inc.**

Agents soliciting and selling Allstate Motor Club memberships represent Allstate Motor Club, Inc.

**Lincoln Benefit Life Insurance Company**

An alternate company to Allstate Life Insurance Company into which qualified Allstate agents can submit specified life and annuity business.

# 4.0   Insurance

As specified in Section XI. of the R3001 Agreement, the following types of insurance with the stated minimum limits of liability must be obtained by R3001 Agents at their sole expense.

- Workers' Compensation in all states in which the R3001 Agent is an employer, including Other States insurance with a waiver of subrogation rights against the Company   - Statutory limits.

- Employer's Liability with a waiver of subrogation rights against the Company   -

    $100,000 bodily injury per accident
    $100,000 disease per employee
    $500,000 policy aggregate

PL 00634

- Automobile liability insurance covering liability for owned and non-owned autos with the Company as an additional insured and a severability of interest endorsement[3] -

    $500,000 combined single limit or 500/500/500

- Commercial General Liability insurance coverage covering liability for both bodily injury and property damage with the Company as an additional insured[4] -

    $500,000 combined single limit

- Professional Liability Insurance (Agents Errors And Omissions Coverage) -

    $1,000,000 each claim
    $1,000,000 aggregate
    with defense costs in addition to policy limits

Proof of insurance, naming the Company as an additional insured where specified, must meet the specifications outlined in Section XI. of the R3001 Agreement. Failure to provide the information will cause the Company to exercise its options as stipulated in Section XI. of the R3001 Agreement.

## 5.0 Processing Fee Applicable To Professional Liability Insurance (Agents Errors And Omissions Coverage) Obtained By The Company

The Company, at its sole discretion, will charge a processing fee to be determined by the Company when the Company obtains the required Errors and Omissions coverage and deducts the premium for such coverage from the agent's commissions due to the agent not providing the Company with proof of Errors and Omissions coverage or, in the Company's opinion, not having obtained coverage which affords adequate protection for the Company.

## 6.0 Payment of Professional Liability Insurance (Errors & Omissions) Deductible

R3001 Agents are responsible for paying the deductible for their Errors and Omissions coverage in a timely manner. If the agent does not reimburse Fireman's Fund for the deductible upon the Fund's request, the Company will pay the deductible and deduct the amount from future commissions due the agent. A processing fee established by the Company will also be deducted.

---

[3]  The Company must appear as an additional insured on the policy and the policy must have a severability of interest endorsement only when Allstate is not the carrier providing coverage.

[4]  The Company must appear as an additional insured only when Allstate is not the carrier providing coverage.

---

PL 00635

# Section 3:  Basis Of Commission

## 1.0    General

R3001 Agents are independent contractors.  The agents participating in the program are responsible for all their expenses.

Commission for performing duties for the Company will be paid in accordance with the procedures set forth in the R3001 Agreement and this Supplement in Chapters 2 and 3, except as noted below.

For an R830 Agent who was formerly an R1500 Agent and converted to the R3001 Agreement, any additions or changes to policies, e.g., add cars, additional coverages, change in deductibles, rerating, chargebacks, etc., affecting the agent's property and casualty book of business recorded under his or her R1500 Agreement and which generate transactions recorded on the R3001 Agent's production statement will be calculated in accordance with the R1500 property and casualty compensation amounts in effect at that time until the policies next renew.  This may result in a different commission amount being applied to subsequent activity to a policy which is higher or lower than the amount recorded would have been otherwise.  Due to the cost of developing, administering and maintaining a system to handle these types of situations, the company will not either manually or mechanically process any kind of commission adjustment when this activity occurs.  Further, these types of activities could adversely affect the R3001 Agent's commission until such time as the agent's entire R1500 "frozen" property and casualty book has rolled at the next renewal to the R3001 commission amounts.

## 2.0    New Business Production

R3001 Agents receive the new business component of their commission for a particular month based on the prior month's recorded new business production.

## 3.0    Renewal Production

Renewal business will be recorded in an R3001 Agent's account as the policies are taken (renewed).  Commission for renewal business will be based on renewal transactions recorded in the agent's account in the prior month.

## 3.1 Service Fees And Relationship Fees

Service fees and relationship fees will be included with renewal commission in the calculation of monthly commission.

PL 00636

## 3.2  Countersigning Fees

Fees for countersigning (in states where required) will be calculated in accordance with state laws and regulations.  Any resulting fee will be included with renewal commission in the calculation of monthly commission.

# 4.0  Agency Development Bonus

R3001 Agents who were formerly R3000 Agents and certain R830 and R1500 Agents converting to the R3001 Agreement will be eligible for an Agency Development Bonus beginning with the second month[1] as an R3001 Agent.  R465 Part-time Agents converting to the R3001 Agreement and agents who became R3001 Agents by purchasing an agency are not eligible for the Agency Development Bonus.

The amount and duration of the bonus is based on the number of full calendar months that the former R3000, R830 or R1500 Agent has been in active agent status prior to conversion.  The maximum bonus percentage to be applied to the R3001 Agent's recorded total new net written property and casualty and first renewal auto premium is 11.50%.  This bonus percentage decreases 0.25% each month until exhausted.  The bonus percentage will not be applied to the following business: Life, Commercial insurance written under any prior agreements, residual market, or to any service fees, relationship fees and countersigning fees.

For example, R3000 Agents and R1500 Agents with 18 full calendar months of service prior to conversion will receive their Conversion Allowance in month 19 and begin their bonus at 11.50% in month 20.  R1500 Agents with 19 full calendar months of service prior to conversion will receive their Conversion Allowance in month 20 and begin their bonus at 11.25% in month 21; R1500 Agents with 20 full calendar months of service prior to conversion will receive their Conversion Allowance in month 21 and begin their bonus at 11.00% in month 22; and so on.  Accordingly, an agent who elects to convert with 63 full calendar months of service would receive a Conversion Allowance in month 64 and a bonus at 0.25% for month 65.

Converting R830 and R1500 Agents with length of service longer than 63 full calendar months will not be eligible for a bonus.

| AGENCY DEVELOPMENT BONUS | | | |
|---|---|---|---|
| MONTH * | BONUS % | MONTH* | BONUS % |
| 20 | 11.50 | 43 | 5.75 |
| 21 | 11.25 | 44 | 5.50 |
| 22 | 11.00 | 45 | 5.25 |

---

[1]   Compensation for an R3001 Agent's first month following conversion is based on the conversion allowance as described in Section 7 of this Supplement.  Exceptions to this rule are R3001 Agents converting from an R465 Agreement and agents who became R3001 Agents by purchasing an agency.

PL 00637

| AGENCY DEVELOPMENT BONUS | | | |
|---|---|---|---|
| MONTH * | BONUS % | MONTH* | BONUS % |
| 23 | 10.75 | 46 | 5.00 |
| 24 | 10.50 | 47 | 4.75 |
| 25 | 10.25 | 48 | 4.50 |
| 26 | 10.00 | 49 | 4.25 |
| 27 | 9.75 | 50 | 4.00 |
| 28 | 9.50 | 51 | 3.75 |
| 29 | 9.25 | 52 | 3.50 |
| 30 | 9.00 | 53 | 3.25 |
| 31 | 8.75 | 54 | 3.00 |
| 32 | 8.50 | 55 | 2.75 |
| 33 | 8.25 | 56 | 2.50 |
| 34 | 8.00 | 57 | 2.25 |
| 35 | 7.75 | 58 | 2.00 |
| 36 | 7.50 | 59 | 1.75 |
| 37 | 7.25 | 60 | 1.50 |
| 38 | 7.00 | 61 | 1.25 |
| 39 | 6.75 | 62 | 1.00 |
| 40 | 6.50 | 63 | 0.75 |
| 41 | 6.25 | 64 | 0.50 |
| 42 | 6.00 | 65 | 0.25 |

\* Full calendar months of service in active agent status.  The months on the chart represent compensation months.

# 5.0    Recovery Of Unearned Commission

If the net of all transactions processed in a month is negative, the negative amount will be considered to be unearned.

When commission is calculated in each subsequent month, total commissions, awards, and bonuses, will be reduced until the full unearned commission amount is recovered.

# Section 4:  Transfer Of Interest

## 1.0    Approval Of A Transfer Of Interest

A transfer of interest in the R3001 Agreement requires prior written consent of the Company. Such consent may be given in the Company's sole discretion and the Company's decision as to whether or not to render such consent will be final.  Transfers of interest include, but are not limited, to the following:

| | |
|---|---|
| Sale | when the interest in the agreement becomes available for purchase and arrangements are made for a price to be paid in consideration |
| Merger | to cause the interest in one or more agreements to combine into one with intent to function as a single business entity |
| Assignment | the conferring of interest in the agreement to another named party |

Approval of a proposed transferee will be conditioned upon the termination of the then active R3001 Agreement and the execution by the Company and the transferee of a new agent agreement.

## 2.0    Business Included In Transfer Of Interest

Upon approval of an R3001 Agent's request for a transfer of interest in accordance with the agent's agreement, the Company will transfer the policies in the terminating/selling agent's account - excluding any business retained by the Company specifically identified in Chapter 1, Section 2, Definitions[1]  - to the account of the transferee.

## 3.0    Commission Amounts Applicable To Purchased Business

The same commission rules and amounts applicable to a transferring agent at the time of the transfer will apply to the transferee when a transfer of interest has been approved.

## 4.0    Allstate Flood Insurance, Assigned Risk, Underwriting Association

Sale of the referenced business which is at the sole discretion of the agent is not considered a transfer of interest.

---

[1]   The exclusion does not apply where a new agreement is executed by the same person to replace an existing R3001, R3001A or R3001B Agreement in order to change to another form of legal entity, e.g., sole proprietorship to corporation or vice versa.

---

PL 00639

# Section 5:  Final Commission Computation

## 1.0    Computation Of Commission

Calculations to determine final commission (not to be confused with the Termination Payment as referenced in Section 6) will be made on commissions recorded in the R3001 Agent's account through the last day an R3001 Agreement is in effect.

Commissions recorded will be based on all new business, renewal business, service fee, relationship fee and countersigning fee amounts issued and recorded on the R3001 Agent's Commission Statement as of the last day the R3001 Agreement is in effect.

The agent will not receive these commissions, if prohibited by state law, due to loss of any required agent license.

## 2.0    Recovery Of Unearned Commission

Recovery of any and all unearned commission shall take place at the time of final commission calculations.  Final commission, including Agency Development Bonus, will be reduced by the amount of any unearned commission.

If final commission is reduced to a zero amount after deducting unearned commission amounts and any unearned commission amount still remains, this amount becomes due and payable to the Company which reserves the right to collect such amount.  The Company may exercise this right by withholding any remaining unearned commission from the Termination Payment described in Section 6 or by receiving payments for such unearned commission directly from the agent.

PL 00640

# Section 6:  Termination Payment

## 1.0    Agreement Specifications

The R3001 Agreement, Section XVIII.[1], describes the Termination Payment options available to R3001 Agents.[2]  This section elaborates on these provisions.

## 2.0    Eligible Business

Production compensation for the month in which the R3001 Agent terminates will be included in the Termination Payment only if the R3001 Agent's agreement is terminated on the last calendar day of the month.  Otherwise, the prior 12 full calendar months' production compensation will be used.

### 2.1 Auto, Personal Property, Commercial

This portion of the payment is based on the earned premiums for the 12 full calendar months preceding the effective date of termination of the agreement on personally secured property and casualty policies in the agent's account.

### 2.2 Personal Life

This portion of the payment is based on the 12 full calendar months' new net written premium times 5% plus the renewal commissions for the same period.

### 2.3 Excluded Business

The following business is excluded from the Termination Payment calculation:

- Business written by the agent under any prior Allstate agent agreement, other than the R3000 Agreement, or the RRM program
- Business the agent purchases from any other Allstate agent which was written under any agreement other than the R3000 or R3001 Agreement.
- Business written under any prior Allstate agent agreement, other than the R3000 Agreement, or the RRM program for an insured that is subsequently replaced in an affiliated company with no lapse in coverage at the time of replacement
- Business not receiving renewal commission such as Motor Club and Single Premium Life Products

---

[1]  Section XIX under the R3001B Agreement.

[2]  Execution of a new agency agreement by the same person due to a change to another form of legal entity, e.g., sole proprietorship to corporation or vice versa, will not entitle the R3001 Agent to a Termination Payment.

PL 00641

- Allstate Flood Insurance
- Assigned Risk
- Reinsurance Facility business
- Business on which the agent receives a service fee, relationship fee or countersigning fee
- Business in lines which the Company no longer sells in the state(s) in which the agent is appointed to represent the Company
- Non-Allstate business the agent is permitted to write (such as Underwriting Association, accommodation business, FAIR Plan, Finance, Expanded Market Coverage and Hawaii Hurricane Relief Fund)

# 3.0    Termination Payment Calculation

The termination payment will be determined in accordance with the following steps:

| STEP | DESCRIPTION | PROCEDURE |
|------|-------------|-----------|
| 1 | Determine Termination Premium Volume | Identify eligible earned premium (new net written premium for Personal Life) by individual line of insurance. |
| 2 | Determine Personal Life Renewal Commissions | |
| 3 | Determine Multipliers | • Personal Life New:  (5% x 1.5 = 7.5%)<br>• Other Lines:  Most recent renewal commission rate for particular line times 1.5. |
| 4 | Apply Multipliers | Calculations made for the following categories:*<br>• Auto<br>• Property<br>• Commercial<br>• Life |
| 5 | Add Personal Life Renewals | Commissions times 1.5. |
| 6 | Determine Total | Combine amounts for all categories. |

\* Lines within a category subject to the same rate (multiplier) may be combined for calculation purposes.

PL 00642

EXAMPLE

| Category | | Calculation | Payment |
|---|---|---|---|
| Auto (10,16) | Premium Multiplier: | $ 500,000 | |
| | Current Renewal % (10.0%) Times 1.5 | .15 | |
| | Category Total | | $ 75,000 |
| Property | Premium Multiplier: | $ 350,000 | |
| | Current Renewal % (10.0%) Times 1.5 | .15 | |
| | Category Total | | $ 52,500 |
| Commercial/ Customizer | Premium Multiplier | $ 65,000 | |
| | Current Renewal % (10.0%) Times 1.5 | .15 | |
| | Category Total | | $ 9,750 |
| Personal Life | New Net WrittenPremium Multiplier (5% x 1.5) | $ 25,000 x .075 | |
| | Personal Life New | | $ 1,875 |
| | Renewal Commission | $ 2,500 x 1.5 | |
| | Personal Life Renewal | | $ 3,750 |
| | TOTAL TERMINATION PAYMENT AMOUNT | | $142,875 |

Figure 1.

PL 00643

# Section 7:  Conversion Allowance

## 1.0    General

The R3001 Agent who converts from an R830, R1500, or R3000 Agreement will receive a conversion allowance as determined by the Company.  Agents who convert to R3001 status from an R465 Allstate Part-time Agent Compensation Agreement or approved buyers who become R3001 Agents by purchasing an agency will not receive a conversion allowance.

## 2.0    Calculation

The conversion allowance will be calculated based on the average of the agent's last three months' authorized compensation prior to conversion (excluding base compensation for R3000 Agents, Allstate Flood Insurance, Assigned Risk non-Allstate business the agent is permitted to write, such as Underwriting Association, accommodation business, FAIR Plan, Finance, Expanded Market Coverage, Hawaii Hurricane Relief Fund and lump sum payments for bonuses, if any, paid by the Company).  The allowance shall be payable in the first month in which the R3001 Agreement is in effect.

PL 00644

# Section 8:  Operating Procedures

## 1.0    Computer Systems

The Company is relying on computer technology to transmit and process insurance and Company Business.  The Company will make available the necessary hardware and software to perform sales and service processing.  R3001 Agents who receive this hardware and software must execute the ALSTAR Document of Understanding.

Schedule of
Commissions

PL 00646

# Table Of Contents

**Chapter 2:  Schedule Of Commissions**

**Section 1:  Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.0    Applying Commission Amounts To Converting Agents' Business . . . . . . . 1

**Section 1a:  Auto** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.0    Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       2.1    Voluntary Auto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       2.2    Residual Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       2.2.1  Reinsurance Facility . . . . . . . . . . . . . . . . . . . . . . . . . 2
       2.2.2  Underwriting Association . . . . . . . . . . . . . . . . . . . . . . 2

**Section 1b:  Personal Property** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.0    Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   3.0    Allstate Flood Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   4.0    Hawaii Hurricane Relief Fund . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Section 1c:  Commercial** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.0    Negotiated Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   3.0    Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       3.1    Voluntary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       3.2    Residual Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
       3.2.1  Reinsurance Facility . . . . . . . . . . . . . . . . . . . . . . . . . 2
       3.2.2  Underwriting Association . . . . . . . . . . . . . . . . . . . . . . 2

**Section 1d:  Personal Life** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   1.0    Personal Life Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.0    Products No Longer Sold . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   3.0    Single Premium Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   4.0    Riders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Section 1e:  Motor Club** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   1.0    Motor Club . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
       1.1    Effective For Memberships Sold April 1, 1993 And Subsequent . . . . . 1
       1.2    Effective For Memberships Sold Prior To April 1, 1993 . . . . . . . . . . 1

PL 00647

# Section 1:  Introduction

## 1.0    General

This chapter contains the current commission amounts applicable to products sold by the R3001 Agent.  Rules for special commission situations are contained in Chapter 3.

## 2.0    Applying Commission Amounts To Converting Agents' Business

Once the agent has converted to the R3001 Agreement, the next renewal of each property and casualty policy in his or her account will be recorded at the applicable renewal amount contained in this chapter.  Prior to each renewal, any policy activity (endorsement, chargeback) will be recorded at the applicable amount from the agent's former schedule.

Commissions for Personal Life for business issued prior to the agent's conversion will be in accordance with the agent's former schedule.  However, all UL policies written prior to July 1, 1994 that are in their sixth or subsequent policy year will be paid at the current Policy Value rate[1] (see Chapter 2, Section 1d).  This is in lieu of renewal commission on UL excess premium.  All UL policies written July 1, 1994 and subsequent will be paid based on the commission tables in Chapter 2, Section 1d.  Also, Flexi policies sold at a level 3% compensation amount will be paid at a 3.5% commission amount on additional contributions after conversion.

Commissions on any unrepresented policies assigned to R3000 Agents for seeding purposes which have not been captured during the first two annual renewal periods after assignment, but on which the R3001 Agent becomes the Agent of Record, will be adjusted (reduced) for the next two annual renewals to 3.5%.

Finally, after conversion there will be no further renewal commissions for Motor Club business sold prior to conversion.

---

[1]   Not applicable to New York R3001 Agents.

# Section 1a:  Auto

## 1.0    General

The following table contains the current commission amounts for R3001 Agents applicable to auto policies.  Those lines in the Auto line group for purposes of agent commission  are listed in Chapter 3, Section 2.  The new policy amount will apply to Added Coverage situations.

In cases where a countersigning agent in a non-resident state is to receive a fee for countersigning a policy, this fee will reduce the commission of the Writing Agent.  Any such reduction will be reflected on the Writing Agent's production statement.

## 2.0    Table

### 2.1  Voluntary Auto

The following commission amounts apply to R3001 Agents.

| Line | Commission Amounts | | | |
| --- | --- | --- | --- | --- |
| | New % | First Renewal % | Subsequent Renewal % | Added Coverage % |
| **Private Passenger** | | | | |
|    Allstate Insurance | 10 | 10 | 10 | 10 |
|    Allstate Indemnity - (except CA & TX) | 8 | 8 | 8 | 8 |
|    Allstate Indemnity - Texas | 10 | 10 | 10 | 10 |
|    Allstate Indemnity - California | | | | |
|    &bull;  Effective prior to 6/1/93[1] | 8 | 8 | 8 | 8 |
|    &bull;  Effective 6/1/93 and subsequent | 10 | 10 | 10 | 10 |
|    &bull;  Rollovers processed 8/1/93 and subsequent[2] | 10 | 10 | 10 | 10 |
|    Allstate County Mutual - Preferred Tier (TX) | 10 | 10 | 10 | 10 |
|    Allstate County Mutual (TX) | 8 | 8 | 8 | 8 |
|    Allstate Property & Casualty (TX) | 10 | 10 | 10 | 10 |
| **Commercially Rated, Non-Fleet** (See Section 1c Commercial for Fleet) | | | | |
|    Allstate Insurance | 10 | N/A | 10 | 10 |
|    Allstate Indemnity | 10 | N/A | 10 | 10 |

---

[1]   Includes conversion from Allstate Insurance Company to Allstate Indemnity prior to 6/1/93.
[2]   Allstate Insurance Company policies effective 1/1/92 through 5/31/93 which were rolled over to Allstate Indemnity after 8/1/93.

PL 00649

## 2.2  Residual Market

Allstate agents are not authorized to charge any fees or accept any compensation beyond that provided for in the agent's agency agreement, or the commission as set forth by the particular state residual market plan except they may charge any fee which is specifically authorized by the particular state Assigned Risk plan rules or state law.  The commission and any specifically authorized fee for state residual market plan business is intended to cover the agent's total involvement in the act of providing insurance:

### 2.2.1  Reinsurance Facility

| State | Commission Amounts | | | |
|---|---|---|---|---|
| | New % | First Renewal % | Subsequent Renewal % | Added Coverage % |
| North Carolina | 10 | 10 | 10 | 10 |
| New Hampshire | 10 | 10 | 6 ½ | 10 |
| South Carolina | | | | |
|    Private Passenger | 10 | 10 | 10 | 10 |
|    Non-Fleet | 10 | N/A | 10 | 10 |

The New Hampshire Driving Record Surcharge will be excluded from Facility premium for purposes of agent commission.  The agent will receive a flat payment of $5.00 for each driving record point up to a maximum of $25.00 (5 points).

### 2.2.2  Underwriting Association

| State | Commission Amounts |
|---|---|
| Michigan (AIPF), Florida (JUA) | 10% |
| Hawaii (JUP)<br>   New Business<br>   Renewals | <br>8% capped at $75<br>5% capped at $35 |

PL 00650

# Section 1b:  Personal Property

## 1.0    General

The following table contains the current commission amounts for R3001 Agents applicable to the various lines in the Personal Property category.  The new policy amount will apply to Added Coverage situations.

In cases where a countersigning agent in a non-resident state is to receive a fee for countersigning a policy, this fee will reduce the commission of the Writing Agent.  Any such reduction will be reflected on the Writing Agent's production statement.

## 2.0    Table

| Line | Commission Amounts | | |
|---|---|---|---|
|  | New % | Renewal % | Add Cov % |
| **Homeowners/Scheduled Personal Property** | | | |
| Allstate Insurance | 20 | 10 | 20 |
| Allstate Indemnity | 20 | 10 | 20 |
| Allstate Texas Lloyd's | 20 | 10 | 20 |
| **Renters** | | | |
| Allstate Insurance | 20 | 10 | 20 |
| Allstate Indemnity | 20 | 10 | 20 |
| Allstate Texas Lloyd's | 20 | 10 | 20 |
| **Condominium Owners** | | | |
| Allstate Insurance | 20 | 10 | 20 |
| Allstate Indemnity (CA) | 20 | 10 | 20 |
| **Mobilehome** | | | |
| Allstate Insurance | 20 | 10 | 20 |
| Allstate County Mutual Insurance | 20 | 10 | 20 |
| **Comprehensive Personal Liability** | 20 | 10 | 20 |
| **Farmers Comprehensive Personal Liability** | 20 | 10 | 20 |
| **Residential Fire** | 20 | 10 | 20 |
| **Theft** | 20 | 10 | 20 |
| **Landlords Package** | 20 | 10 | 20 |
| **Boatowners (including the Recreational Package Policy)** | 20 | 10 | 20 |
| **Personal Umbrella** | 20 | 10 | 20 |
| **Workers' Comp - Residence Employees** | | | |
| First $500 | 10 | 5 | 10 |
| Over $500 | 7 ½ | 5 | 7 ½ |
| **Mortgage Security Plan** | (See 2-1d) | | |

PL 00651

| Line | Commission Amounts | | |
|---|---|---|---|
| | New % | Renewal % | Add Cov % |
| Home Mortgage Protection Plan | (See 2-1d) | | |

# 3.0    Allstate Flood Insurance

R3001 Agents are permitted to sell flood insurance through a federally regulated program. The current new commission amount is 17% and the current renewal commission amount is 14%; however, the commission amount may not be less than $10.[1]

# 4.0  Hawaii Hurricane Relief Fund

Allstate agents are permitted to sell Hawaii Hurricane Relief Fund (HHRF) business through a state regulated program for customers with underlying policies in the Fire and/or Homeowners lines. Agents will be paid a $10 commission for each new and renewal HHRF policy.

---

[1]  Excludes agents that selected the NFIP commission schedule, whose Flood business, New and Renewal, will be subject to the then current NFIP commission schedule.

PL 00652

# Section 1c: Commercial

## 1.0   General

The following table contains the current commission amounts for R3001 Agents applicable to Commercial insurance written in Allstate Insurance Company, Allstate Indemnity Company, and Allstate Texas Lloyd's.  The new policy amount applies to Added Coverage situations.

Two agents may agree to split commission on a commercial policy.  Split commission is described in Chapter 3, Section 6.

## 2.0   Negotiated Amounts[1]

With respect to certain Commercial insurance to be determined by the Company, the agent and Allstate may agree in writing on percentages other than those provided.  Negotiated percentages will apply on an individual risk basis for such business as Excess of Loss or Deductible, Interstate, or any policy requiring special treatment of premium.

## 3.0   Table

## 3.1  Voluntary

| Line | Commission Amounts | |
|---|---|---|
| | New | Renewal |
| Commercial Casualty | | |
|    Fleet Auto | 10 | 10 |
|    All Other (except Non-Fleet[2]) | | |
|      First $2,500 | 20 | 10 |
|      Over $2,500 | 12 | 10 |
| Commercial Fire | | |
|      First $2,500 | 20 | 10 |
|      Over $2,500 | 12 | 10 |
| Business Package Policy, Texas Commercial Package Policy, Customizer, Texas Businessowners | | |
|      First $2,500 | 20 | 10 |
|      Over $2,500 | 12 | 10 |
| Workers' Compensation and Employers' Liability/New York Disability Benefits Law | | |
|      First $500 | 10 | 5 |
|      Over $500 | 7 ½ | 5 |

---

[1]   Not permitted in South Dakota.

[2]   See Section 1a - Auto

PL 00653

## 3.2  Residual Market

### 3.2.1  Reinsurance Facility

| State | Commission Amounts | |
|-------|-----|---------|
|       | New | Renewal |
| New Hampshire | 10 | 6 ½ |
| North Carolina<br>    Public and Long Haul Vehicles<br>    All Other Vehicles | 5<br>10 | 5<br>10 |
| South Carolina<br>    (Refer to chart in Section 3.1 for<br>    applicable amounts) | | |

### 3.2.2  Underwriting Association

| State | Commission Amounts | |
|-------|-----|---------|
|       | New | Renewal |
| Hawaii | 8 | 5 |
| Michigan | 10 | 10 |
| Florida<br>    Public and Long Haul Vehicles<br>    All Other Vehicles | 5<br>10 | 5<br>10 |

PL 00654

# Section 1d:  Personal Life

# 1.0    Personal Life Products

The current Personal Life commission amounts for R3001 Agents are as follows.   Renewal commissionable premiums for Universal Life products are limited to four times the  Minimum Annual premium.

If the policy was initially recorded prior to an agent's conversion to the R3001 Agreement, the Life amounts applicable will be in accordance with the schedule under the agent's former agreement as it existed at the time of policy issuance, except as noted in Chapter 2, Section 1.

**Effective for business written July 1, 1994 and subsequent**

| Product | Commission Amounts | | | | |
|---|---|---|---|---|---|
| | New Policy | Renewal Policy Year 2 | Renewal Policy Year 3 | Renewal Policy Year 4 | Renewal Policy Year 5 & Subsequent |
| Universal Life Premiere | 50 | 5 | 5 | 5 | 2 |
| Universal Life 100R | 40 | 5 | 5 | 5 | 2 |
| Revised Whole Life | 50 | 5 | 5 | 5 | 2 |
| Mortgage Security Plan[1] | 40 | 10 | 10 | 2 | 2 |
| Home Mortgage Protection Less than $100,000 $100,000 + | 40 40 | 10 10 | 10 10 | 5 5 | 5 5 |
| Allstate Protector Plus | 30 | 5 | 5 | 5 | 5[2] |
| Allstate Maximum Term | 30 | 5 | 5 | 5 | 5[2] |
| CD IRA | 3.5 | 3.5 | 3.5 | 3.5 | 3.5 |

---

[1]   Not available in ME, NC, NY, OH, OR, SC, TX and VT.

[2]   2% in New York beginning in policy year 16.

Effective for business written prior to July 1, 1994

| Product | Commission Amounts | | | |
|---|---|---|---|---|
| | New Policy | Renewal Policy Year 2 | Renewal Policy Year 3 | Renewal Policy Years 4 & Subsequent |
| Universal Life Premiere | 40[3] | 5 | 5 | See Footnote[4] |
| Universal Life 100R[5] | 30[3] | 5 | 5 | See Footnote[6] |
| Revised Whole Life | 40 | 5 | 5 | See Footnote[7] |
| Mortgage Security Plan[8] | 20 | 10 | 10 | 10 |
| CD IRA | 3.5 | 3.5 | 3.5 | 3.5 |
| Home Mortgage Protection<br>Less than $100,000<br>$100,000 + | <br>45<br>30 | <br>15<br>10 | <br>7<br>5 | <br>5[9]<br>5[7] |
| Allstate Protector Plus | 30 | 5 | 5 | 5[10] |
| Allstate Maximum Term | 30 | 5 | 5 | 5[10] |
| Annual Renewable Term | 20 | 10 | 10 | 10[10] |
| 5 Year Renewable Term | 30 | 10 | 10 | 10[10] |

# 2.0   Products No Longer Sold

UL 50            Annual Renewable Term
UL 100           5 Year Renewable Term
Universal Term

# 3.0   Single Premium Products

The commission amount applicable to Single Premium Deferred Annuities (SPDA) for R3001 Agents is currently 3 1/2% of the net written premium.  There is no renewal commission.

---

[3]   Contributions in excess of the Minimum Annual premium in the first year receive 2% commission.

[4]   In New York; 5% for policy years 4 and 5, 2% for policy year 6 and subsequent.  All states except New York, 5% in policy years 4 and 5, .5% of policy value in policy year 6 and subsequent.

[5]   Not available in New York.

[6]   5% in policy years 4 and 5; .5% of policy value in policy years 6 and subsequent.

[7]   5% in policy years 4 and 5; 2% in policy year 6 and subsequent.

[8]   Not available in ME, NC, NY, OH, OR, SC, TX and VT.

[9]   2% in New York.

[10]   2% in New York beginning in policy year 16.

---

PL 00656

# 4.0    Riders

Riders, as described in Chapter 3, receive the same commission amount as the base rate plan to which they are attached with the following exceptions:

- Children's Level Term Riders on all Universal Life policies receive 45% commission on the rider premium in the first year.

- Primary Insured Term Riders on Universal Life Premiere policies receive 30% commission on the rider premium in the first year.

PL 00657

# Section 1e:  Motor Club

## 1.0  Motor Club

## 1.1  Effective For Memberships Sold April 1, 1993 And Subsequent

| Membership Type | Percent Of New Membership Charge |
|---|---|
| Standard | 45 |
| Deluxe | 45 |

0% will be paid on renewals.

## 1.2  Effective For Memberships Sold Prior To April 1, 1993

| Membership Type | Percent Of New Membership Charge |
|---|---|
| Standard | 35 |
| Deluxe | 45 |

0% will be paid on renewals.

PL 00658

Commission
Interest

PL 00659

# Table Of Contents

**Chapter 3:  Commission Interest**

**Section 1:  Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0    Added Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.0    Not Taken Policy Penalty Fee . . . . . . . . . . . . . . . . . . . . . . . . . 2
    4.0    Market Assistance Plan (MAP) . . . . . . . . . . . . . . . . . . . . . . . . 3

**Section 2:  Auto** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0    Special Commission Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.0    Residual Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    4.0    Accommodation Products . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Section 3:  Personal Property** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0    Residual Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    3.0    Mine Subsidence Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    4.0    Joint Underwriting Association Business . . . . . . . . . . . . . . . . . 3

**Section 3a:  Homeowners** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0    Added Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0    Homeowners Or Deluxe Country Replacement Policies . . . . . . . . . . . . . . 3
    3.0    Condominium Owners Policy Replaces A Renters Policy . . . . . . . . . . . . 3
    4.0    Section I Homeowners Coverages For A Secondary Residence . . . . . . . . 4
    5.0    Extended Coverage On Jewelry, Watches & Furs (JWF) Coverage . . . . . 4
    6.0    Scheduled Personal Property (SPP) Coverage . . . . . . . . . . . . . . . 5
    7.0    Property Policy Replaced In Another Allstate Company . . . . . . . . . . . 5
    8.0    Conversion Of Fire, Theft And/Or CPL To A Homeowners Or Deluxe Country
            Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Section 3b:  Mobilehome** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.0    Added Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0    Extended Coverage On Jewelry, Watches And Furs (JWF) Coverage . . . . 1
    3.0    Scheduled Personal Property Coverage Endorsed To An Existing Mobilehome
            Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    4.0    Allstate County Mutual Mobilehome Policies (Texas) . . . . . . . . . . . . . 2

**Section 3c:  Boatowners - Recreational Package Policy** . . . . . . . . . . . . . . 1

    1.0    Line Group Designation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2.0    Commission For Items Written In A Separate Policy . . . . . . . . . . . . . 1

PL 00660