**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-09206 JAK (FFMx) | Date | March 26, 2013 |
|---|---|---|---|
| Title | Juan Comparetto, et al. v. Allstate Insurance Company | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION TO DISMISS THE THIRD AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) (DKT. 73)**

On March 25, 2013, the Court heard oral argument on Defendant's motion to dismiss (the "Motion") with respect to portions of the Third Amended Complaint ("TAC"). The Motion is dependent on an interpretation of the Court's earlier ruling on Defendant's Motion to Dismiss the Second Amended Complaint. Dkt. 69.  For the reasons stated in this Order, which arise from that interpretation, the Motion is DENIED.

1.   Factual and Procedural Background

This action arises from the Exclusive Agency Agreement (the "Agreement") entered by Plaintiffs and Defendant Allstate Insurance Company ("Defendant" or "Allstate"). The Agreement converted Defendant's California-based insurance agents from employees to independent contractors. TAC ¶ 27, Dkt. 72. Juan Comparetto ("Comparetto"), one of 20 named Plaintiffs, filed this class action in the Los Angeles County Superior Court on September 1, 2011. The original complaint contained eight causes of action against Defendant and five individuals (Robert H. Barge, III; Barbara Larkin; Timothy Larkin; Heidi Palmer; and Brad Palmer). Notice of Removal, Exh. B, Dkt. 1. The case was removed on November 4, 2011. *Id.* On December 12, 2011, Plaintiffs filed their First Amended Complaint ("FAC"), which excluded the individual defendants, and made Allstate the sole defendant. Dkt. 29. Defendant moved to dismiss the FAC on January 13, 2012 (Dkt. 36), and on April 23, 2012 the Court granted the motion, in part with leave to amend and in part without leave to amend (Dkt. 53). Plaintiffs filed their Second Amended Complaint ("SAC") on May 8, 2012. Dkt. 57. Defendant moved to dismiss the SAC on June 1, 2012 (Dkt. 60). The Court ruled on the motion on August 22, 2012 (the "August 2012 Order"), granting it in part with leave to amend, granting it in part without leave to amend, and denying it in part (Dkt. 69). Plaintiffs filed the TAC on September 24, 2012. Dkt. 72.

The TAC advances three causes of action: (i) breach of the implied covenant of good faith and fair dealing, based on the allegation that Defendant denied in bad faith the approval of Plaintiffs' proposed sales of their agencies to certain potential buyers; (ii) breach of the Agreement through Defendant's alleged refusal to approve these sales and its alleged practice of micro-managing Plaintiffs' agencies to the extent that Plaintiffs were misclassified as independent contractors; and (iii) violations of Cal. Bus. &

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-09206 JAK (FFMx) | Date | March 26, 2013 |
|---|---|---|---|
| Title | Juan Comparetto, et al. v. Allstate Insurance Company | | |

Prof. Code § 17200 et seq., based on the preceding claims and other violations of state law.

As noted, in the TAC, Plaintiffs allege that the Agreement requires any Plaintiff obtain Defendant's approval of the buyer to whom that Plaintiff proposes to sell his or her business. TAC ¶ 27. Plaintiffs also allege that, during and after the negotiation of the Agreement, Defendant represented that this provision would be used only in good faith. Thus, Defendant stated that it would only reject "potential buyers that did not meet minimum levels of achievement". *Id.* However, Plaintiffs allege that Defendants rejected even the most qualified proposed buyers. *Id.* at ¶ 42. Plaintiffs also allege that, as a result of this manner of applying the Agreement, Plaintiffs were necessarily required to sell their businesses for amounts that were substantially below their proper market values. *Id.* at ¶¶ 40-42. Thus, because Defendant allegedly refused to approve many extremely well-qualified potential buyers, Plaintiffs' bargaining power was limited to the degree that the corresponding sales prices of their businesses were reduced substantially. *Id.*

As noted above, in response to Defendant's Motion to Dismiss the SAC (Dkt. 60), the Court issued the August 2012 Order in which that motion was granted in part with leave to amend, granted in part without leave to amend, and denied in part. With respect to the first cause of action in the SAC, for breach of the implied covenant of good faith and fair dealing, the Order denied the motion to dismiss as to the six Plaintiffs who allegedly submitted proposed buyers that Defendant did not consider in good faith. As to the other Plaintiffs, who did not allege that they had submitted proposed buyers to Defendant, the Order granted the motion to dismiss the first cause of action with leave to amend. In connection with this holding the Order stated:

> The outcome is different as to those Plaintiffs who never submitted proposed buyers to Allstate. Because they did not submit proposed buyers, there can be no actual breach of contract, and no corresponding standing to sue for actual breach. "There can be no *actual* breach of a contract until the time specified therein for performance has arrived." *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975) (emphasis in original). In this case, Plaintiffs allege that Defendant breached the implied covenant by not considering in good faith proposed buyers. The required performance was a good faith consideration of proposed buyers. The time for performance was, therefore, when Plaintiffs submitted proposed buyers. There could be no bad faith failure to consider a proposed buyer before a buyer was proposed. Thus, actual breach required that Plaintiffs submit a proposed buyer.
>
> At oral argument, Plaintiffs argued that some Plaintiffs had learned that Defendant would not consider any proposed buyers who had not been pre-approved. Consequently, these Plaintiffs allegedly did not bother to submit any proposed buyers, believing such submission futile. Instead, they allegedly acquiesced to sales to Defendant's pre-approved buyers at artificially low prices. To the extent that these Plaintiffs may have been damaged by Defendant's alleged actions, Plaintiffs cannot bring a claim for actual breach of the implied covenant on this theory; there was no alleged failure to consider any proposed purchaser, that is, no failure to act in good faith at the time of performance.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV11-09206 JAK (FFMx) | Date | March 26, 2013 |
| Title | Juan Comparetto, et al. v. Allstate Insurance Company | | |

Plaintiffs may be able to advance a theory of anticipatory breach of the implied covenant, even if they never submitted any proposed buyers. They could do so, however, only if they can allege that Defendant informed them that it would not consider in good faith any proposed buyers submitted by these Plaintiffs. Thus, anticipatory breach occurs when a party repudiates the contract, either expressly by "clear, positive, unequivocal refusal to perform," or impliedly, but putting it out of his power to perform substantially. *Taylor*, 15 Cal. 3d at 137. Under these standards, if Defendant informed Plaintiffs that it would not perform, or made it impossible for Defendant to perform, Plaintiffs may have a claim for anticipatory breach. "[A]nticipatory repudiation permits the promisee to recover damages immediately for a total breach of contract without performing or offering to perform any conditions precedent under the contract." *County of Solano v. Vallejo Redev. Agency*, 75 Cal. App. 4th 1262, 1276 (1999). However, "the nonbreaching party must prove that it had the ability to perform under the contract." *Id.* Thus, it is not enough for a Plaintiff to allege that Defendant declared that it would not consider any proposed purchasers; rather, in order for any Plaintiff to bring a claim for anticipatory breach, such Plaintiff must have been able to perform, by submitting a proposed buyer, at the time Defendant allegedly repudiated its commitment to consider proposed buyers in good faith. At a minimum, to have standing, such a Plaintiff must allege that he had a specific buyer "waiting in the wings" at the time of repudiation. Mere speculation that a Plaintiff could possibly find a proposed purchaser, or would submit one at a later date, is insufficient, because that would not establish that Plaintiff's ability to perform at the time of repudiation. Further, if Plaintiffs had neither submitted a proposed buyer, nor had a specific buyer identified at the time of repudiation, any calculation of subsequent damages would be "speculative and uncertain and practically impossible to ascertain." *Lemat Corp. v. Barry*, 275 Cal. App. 2d 671, 680 (1969). If the requirement were otherwise, Plaintiffs could seek to calculate damages by comparing the price at which they sold their agencies to pre-approved buyers to a price that they would have attained at a hypothetical sale, at an unspecified time, under theoretical market conditions, after conjectural negotiations, with an unknown buyer. Plaintiffs may not recover contract damages under such conditions. Further, a Plaintiff who had neither submitted a proposed purchaser, nor was ready to perform by submitting a proposed buyer, lacks standing.

*Id.*

In the Motion, Defendant seeks the dismissal of the following: (i) the first cause of action as to Plaintiffs Comparetto, Manuel Aragon ("Aragon"), Robert Johnston ("Johnston"), Delores Jane Munsell ("Munsell"), Paul Schiefen ("Schiefen")[1], Billy Taylor ("Taylor"), James Webb ("Webb"), Billy J. Taylor Insurance Agency, Inc. ("Taylor Insurance"), Munsell Insurance Agency, Inc. ("Munsell Insurance"), and Brownwood Insurance Agency, Inc. ("Brownwood Insurance") (collectively, the "10 Plaintiffs"); and (ii) the third cause of action as to claims premised on those advanced by the 10 Plaintiffs in the first cause of action. Dkt. 73. Defendant argues that, as to the 10 Plaintiffs, the allegations of the TAC do not meet the standards set forth in the August 2012 Order.

---

[1] Schiefen's last name is spelled differently throughout the documents submitted to the Court.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-09206 JAK (FFMx) | Date | March 26, 2013 |
|---|---|---|---|
| Title | Juan Comparetto, et al. v. Allstate Insurance Company | | |

2.  <u>Analysis</u>

The allegations by the 10 Plaintiffs in the TAC in support of the first and third causes of action satisfy the standards set forth in the August 2012 Order. The following allegations are among those made by the 10 Plaintiffs:

    (i) Aragon: "Prior to selling to Cook, Aragon, had learned that ALLSTATE would not consider any potential buyer whom Aragon might present to ALLSTATE but rather ALLSTATE would only approve buyers who were pre-approved by Allstate. . . . At the time of the sale to Cook, Aragon had additional interested buyers, Tony Paoletta and Michael Aragon, whom he did not even present to ALLSTATE in light of Allstate's policy that it would not consider anyone not pre-approved by Allstate." TAC ¶ 51.

    (ii) Comparetto: "Prior to selling to Christiansen, Comparetto had learned that ALLSTATE would not consider any potential buyer whom Comparetto might present to ALLSTATE but rather ALLSTATE would only approve buyers who were pre-approved by Allstate. In fact, at the time that Comparetto sold his book of business to Christianson [sic] (whom Comparetto had serendipitously discovered was a pre-approved buyers [sic]), he had several Allstate Agency owners who contemporaneously expressed an interest in buying his book of business, including but not limited to, John Alsop, Omar Zaki, and Sean McMullin, to any one of whom Comparetto was ready to sell his book of business and all of whom were prepared to competitively bid against one another to buy Comparetto's book of business, on the condition that ALLSTATE would 'approve' them as potential buyers." *Id.* at ¶ 54.

    (iii) Johnston: "Prior to selling to Van Noy, Johnston had learned that ALLSTATE would not consider any potential buyer whom Johnston might present to ALLSTATE but rather ALLSTATE would only approve buyers who were pre-approved by Allstate. . . . At the time of the sale to Van Noy Johnston had additional interested buyers, John Alsop and Gary Whithy whom Johnston did not even present to ALLSTATE in light of Allstate's policy that it would not consider anyone not pre-approved by Allstate." *Id.* at ¶ 55.

    (iv) Munsell: "Prior to selling to Moore, Munsell, had learned that ALLSTATE would not consider any potential buyer whom Munsell might present to ALLSTATE but rather ALLSTATE would only approve buyers who were pre-approved by Allstate. . . . At the time of the sale to Moore, Munsell had at least one additional interested buyer, John Alsop, whom Munsell did not even present to ALLSTATE in light of Allstate's policy that it would not consider anyone not pre-approved by ALLSTATE." *Id.* at ¶ 57.[2]

    (v) Schiefen: "In Schiefen's case he was told by ALLSTATE management personnel Leslie Carpenter that ALLSTATE would not consider any buyer Schiefen located who was not already on Allstate's pre-approved list. . . . At the time of Schiefen's sale to Bustamante, Scheifen had other interested potential buyers whom he did not even present to ALLSTATE in light of Allstate's stated policy that ALLSTATE would not consider any potential buyer who ALLSTATE had not already pre-approved. Potential buyers whom Scheifen did not present to ALLSTATE for approval because of Allstate's policy included, Wendy Corr, Adriana Boheim, Frank Lucito, Robert Feldman and Kelly and John Rosdale." *Id.* at ¶ 60.[3]

    (vi) Taylor: "Prior to selling to Petri, Taylor, had learned that ALLSTATE would not consider any potential buyer whom Taylor might present to ALLSTATE but rather ALLSTATE would only approve

---

[2] This applies to Plaintiff Munsell Insurance, as well.
[3] This applies to Plaintiff Brownwood Insurance, as well.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-09206 JAK (FFMx) | Date | March 26, 2013 |
|---|---|---|---|
| Title | Juan Comparetto, et al. v. Allstate Insurance Company | | |

buyers who were pre-approved by Allstate. . . . At the time of Taylor's sale to Petri, Taylor had other interested potential buyers whom he did not even present to ALLSTATE in light of Allstate's stated policy that ALLSTATE would not consider any potential buyer who ALLSTATE had not already pre-approved. One potential buyer whom Taylor did not present to ALLSTATE for approval because of ALLSTATE's policy was David Achenbach." *Id.* at ¶ 61.[4]

    (vii) Webb: "Prior to selling to Chavez, Webb had learned that Allstate would not consider any potential buyer whom Webb might present to Allstate but rather Allstate would only approve buyers who were pre-approved by Allstate. . . . At the time of the sale to Chavez Webb had at least one additional interested buyer, Dave Nobel, whom Webb did not even present to Allstate for approval in light of Allstate's stated policy that it would only consider pre-approved buyers for purchase of Webb's economic interest." *Id.* at ¶ 62.

As to each of the 10 Plaintiffs, the TAC adequately has alleged an anticipatory breach of the implied covenant of good faith and fair dealing under the standard set forth in the August 22 Order. Thus, the TAC alleges, *inter alia,* that: (i) each of the 10 Plaintiffs discovered that Defendant would not consider an appropriate, potential buyer as opposed to one that Defendant proposed to each of the Plaintiffs, *i.e.*, that Defendant would not perform; and (ii) each of the 10 Plaintiffs could have submitted at least one interested buyer, who was "waiting in the wings," at the time of this alleged repudiation. Defendant's arguments that Plaintiffs cannot prove with sufficient evidence either that there were such potential buyers "waiting in the wings" or that the sales prices for their agencies were reduced as a result, are not matters that are properly presented on a motion to dismiss in which the allegations of the operative complaint are deemed true.[5]

For the foregoing reasons, the Motion is DENIED.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |

---

[4] This applies to Plaintiff Taylor Insurance, as well.
[5] As noted at the hearing, and as conceded there by Plaintiffs' counsel, whether such claims are ones that may be presented through a class proceeding is far from clear given the potential need for proof specific to each such plaintiff as to their respective discussions or negotiations with potential buyers.